UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STX PAN OCEAN CO., LTD | CIVIL ACTION |
| VERSUS | NO: 10-4613 |
| COUTINHO & FERROSTAAL, INC., AND GOTHAER ALLGEMEINE VERICHERUNG AG | SECTION: "S" (1) |

ORDER AND REASONS

**IT IS HEREBY ORDERED** that Coutinho & Ferrostaal, Inc.'s and Gothaer Allgemeine Versicherung AG's Motion to Dismiss (Doc. #6) is **GRANTED**, and the complaint is **DISMISSED WITHOUT PREJUDICE**.

BACKGROUND

In 2008, defendant Coutinho & Ferrostaal, Inc. ("C&F") purchased approximately 1,816 bundles of steel pipe from Lianong Steel Pipe Co. The bundles were transported from Dalian, China to New Orleans, Louisiana aboard the M/V NEW EMINENCE. New Confidence Line, S.A. owned the vessel; HSIN Chien Marine-Taipei operated and managed the vessel; China Marine Shipping Agency Liaoning, Co., Ltd. was the vessel's agent; and plaintiff STX Pan Ocean Co., Ltd. was the time charterer. The cargo was insured by defendant Gothaer Allgemeine Vericherung AG.

On October 27 and 30, 2008, nearly identical bills of lading were issued for the cargo on forms provided by STX. The bills of lading provided in pertinent part that:

> (Identity of Carrier): The contract evidenced by this Bill of Lading is between the Merchant and the owner of the vessel named herein (or

substitute) and it is therefore agreed that said shipowner only shall be liable for any damage or loss due to any breach or nonperformance of any obligation arising out of the contract of carriage whether or not relating to the vessel's seaworthiness. If, despite the foregoing, it is adjudged that any other is the carrier and/or bailee of the goods shipped hereunder, all limitations of and exonerations from, liability provided for by law or by this Bill of Lading shall be available to such other. It is further understood and agreed that as the Line, Company or Agent who has executed this Bill of Landing for an on behalf of the master is not a principal in the transaction, said Line, Company or Agents shall not be under any liability arising out of the contract of carriage, nor as carrier or bailee of the goods.

(Local Clause): (Cargo to or from U.S.A.): As regards goods moving to and from U.S.A. this Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States approved April 15, 1936. The Carrier shall be entitled to all of the rights and immunities set forth in the said Act, and to the extent that any terms of the Bill of Landing is repugnant to or inconsistent with anything in such Act, it shall be void.

(Jurisdiction): Any dispute arising under this Bill of Lading shall be decided in the country where the Carrier has his principal place of business, and the law of such country shall apply except as provided elsewhere herein.

When the cargo arrived in New Orleans, Louisiana on December 8, 2008, surveyors discovered that the cargo was damaged. C&F filed a claim with Gothaer, which paid the claim. Gothaer was subrogated to C&F's rights to recover against the parties responsible for the cargo damage.

In November 2009, Gothaer filed suit against STX, New Confidence, HSIN, and China Marine in the Dalian Maritime Court, People's Republic of China to recover for the cargo damage. Gothaer claimed that STX was the contract carrier under the bills of lading.

On December 23, 2010, STX filed this declaratory judgment action, seeking a determination that it is not liable to C&F and Gothaer for the cargo damage.  STX also seeks to enjoin the Chinese litigation. It argues that the Chinese suit is in breach of the forum selection clause set forth in the bills of lading.  STX argues that, because its principal place of business is in Seoul, South Korea, the suit should have been brought in South Korea.

C&F and Gothaer filed a motion to dismiss arguing that this court lacks of subject matter jurisdiction due to the forum selection clause. They also argue that STX's claims are barred by COGSA's one-year statute of limitations; that Gothaer is not subject to personal jurisdiction in Louisiana; and STX failed to state a cause of action against C&F because C&F has not been made a party to the Chinese litigation.

## ANALYSIS

**A.     Legal Standard**

Motions to dismiss based on a forum selection clause can be brought under Rule 12(b)(1) or Rule 12(b)(3) of the Federal Rules of Civil Procedure. Ambraco, Inc. v. Bossclip B.V., 570 F.3d 233, 237-38 n. 1 (5th Cir. 2009), cert. denied, 130 S.Ct. 1054 (2010).  A Rule 12(b)(1) motion challenges the subject matter jurisdiction of the district court to hear a case. FED. R. CIV. PRO. 12(b)(1);  Ramming v. United States, 281 F.3d 158, 161 (5th Cir.2001).  Rule 12(b)(3) allows a party to question whether the court is the proper venue. Id. at 12(b)(3). "[U]nder both Rule 12(b)(1) and Rule 12(b)(3), the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." Ambraco, 570 F.3d at 238 (quotations and citations omitted).

### B.     Declaratory Judgment Actions

The federal Declaratory Judgment Act states: "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.  "A federal court may not issue a declaratory judgment unless there exists an 'actual controversy'; i.e., there must be a substantial controversy of sufficient immediacy and reality between the parties having adverse legal interests." Middle S. Energy, Inc. v. City of New Orleans, 800 F.2d 488, 490 (5th Cir. 1986).  A controversy is justiciable only where "it can be presently litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." Rowan Cos. v. Grim, 876 F.2d 26, 28 (5th Cir. 1989) (quoting Brown & Root, Inc. v. Big Rock Corp., 383 F.2d 662, 665 (5th Cir. 1967)).  It gives federal courts the competence to declare rights, but it does not impose a duty to do so.  If there is jurisdiction, whether to grant a declaratory judgment is within the sound discretion of the trial court.

### C.     The Forum Selection Clause

Federal law governs that enforceability of forum selection clauses in admiralty cases. Carnival Cruise Lines, Inc. v. Shute, 111 S.Ct. 1522, 1525 (1991). Under federal law, a forum selection clause is "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S BREMEN v. Zapata Off-Shore Co., 92 S.Ct. 1907, 1913 (1972).  Thus, a party challenging a forum selection clause bears a "heavy burden of proof" and must "clearly show" that "enforcement would be unreasonable and unjust, or

that the clause was invalid for such reasons as fraud or overreaching." Id. at 1916; Carnival Cruise Lines, 111 S.Ct. at 1528 (holding that the moving party bears a "heavy burden of proof" in establishing the invalidity of the forum selection clause). Moreover, a forum selection clause may be "held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." Ambraco, 570 F.3d at 539 (quoting BREMEN, 92 S.Ct. at 1916). The critical inquiry to determining whether a clause violates public policy is whether "the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies." Id. (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 105 S.Ct. 3346, 3359 (1985)). Therefore, when COGSA applies to the shipment at issue, the presumption of validity may be overcome when the forum selection clause relieves that carrier or vessel from COGSA liability or lessens such liability. See Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER, 115 S.Ct. 2322, 2329-30 (1995).

Congress enacted COGSA to remedy specific abuses by common carriers. Id. at 2327. "In the 19th Century it was a prevalent practice for common carriers to insert clauses in bills of lading exempting themselves from liability for damage or loss, limiting the period in which the plaintiffs had to present their notice of claim or bring suit, and capping any damage awards per package." Id. (citations omitted). Section 3(8) of COGSA prevents carriers from imposing contractual provisions in their bills of lading that would undermine COGSA:

> Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening

>such liability otherwise than as provided in this chapter shall be null and void and of no effect.

46 U.S.C. § 30701, COGSA § 3(8).

Although COGSA prevents carriers from lessening their liability below what is stipulated by law, it "does not prohibit parties from agreeing to enforce the bill of lading provisions in a particular forum." Ambraco, 570 F.3d at 539 (citing SKY REEFER, 115 S.Ct. at 2322). COGSA resulted from a multinational effort to establish " a uniform system of international rules governing carrier and shipper liability." Id. at 539 n. 3 (quoting Haynsworth v. The Corp., 121 F.3d 956, 968 (5th Cir. 1997). COGSA is the United States of America's version of the Brussels Convention for the Unification of Certain Rules Relating to Bills of Lading, Aug. 25, 1924, 51 Stat. 233, 120, L.N.T.S. 155 ("Hague Rules"), which are a uniform system of rules developed by the international community to govern disputes over the liability of shippers and carriers participating in international trade. Id. COGSA and the Hague Rules "are meant to be applied in international forums of dispute resolution." Id. (citing SKY REEFER, 115 S.Ct. at 2328).

The bills of lading at issue contain a forum selection clause that provides that disputes arising thereunder shall be decided in the country where the carrier maintains its principal place of business. "Carrier" is defined as the vessel owner, but the definition recognizes the possibility that another party may be adjudged to be the carrier by affording any party deemed to be the carrier the rights provided under the bills of lading. The bills of lading also have a clause paramount that provides that COGSA applies when goods are shipped to or from the United States, that the carrier "shall be

entitled to all of the rights and immunities set forth in the said Act, and to the extent that any terms of the Bill of Landing is repugnant to or inconsistent with anything in such Act, it shall be void."

STX argues that because it maintains its principal place of business in Seoul, South Korea, the suit should have been brought in South Korea, not China. STX also argues that the Chinese court will not apply COGSA. STX's Chinese counsel, Zhao Shuzhou, declared that it is likely that the Chinese court would not enforce the bills of lading against the subrogee, Gothaer, because Gothaer did not have the opportunity to negotiate the terms of the bill of lading. He opined that it is likely that the Chinese Court would apply the Chinese Maritime Code, preventing STX from availing itself of its COGSA defenses. Alternatively, STX asserts that as time charterer it is excluded from the definition of carrier in the bills of lading, and the forum selection clause does not apply to it. Further, STX contends that New Orleans is a more convenient forum.

STX has not met its "heavy burden of proof" of clearly showing that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." STX cannot show that the forum selection clause was the result of fraud or overreaching because to it provided the forms for the bills of lading, and it has not presented any evidence that the relevant clauses of its form were altered by another party.

Further, STX has not clearly established that the Chinese court will not apply COGSA or that COGSA's policies would be undermined by enforcing the forum selection clause. Shuzhou did not definitively declare that the Chinese court would not apply COGSA. Instead, he said that the bills of lading might not be enforced against the subrogee. COGSA applies to the bills of lading pursuant to the clause paramount, and also by its own force. <u>See</u> 46 U.S.C. § 30701, COGSA (COGSA

applies to "[e]very bill of lading . . . for the carriage of goods by sea to or from ports of the United States, in foreign trade. . ."). COGSA, and the Hague Rules from which it is derived, are intended to be applied by international forums in shipping disputes. STX has not definitively demonstrated that the Chinese court will not apply COGSA to this dispute by its own force, regardless of how it interprets and applies the bills of lading.

Moreover, STX has not demonstrated that the forum selection clause does not apply to it. STX contends that it is not the carrier under the bills of lading because it is not the vessel owner. The forum selection clause applies to all disputes arising under the bills of lading. Further, the bills of lading recognize that another party may be adjudged the carrier, and COGSA defines "carrier" to include a "charter who enters into a contract of carriage with the shipper." See id. at COGSA § 1(a). Although China may not be the proper forum if STX is deemed the carrier, the United States District Court for the Eastern District of Louisiana is improper under the forum selection clause, and issues regarding the Chinese court's jurisdiction should be addressed by that court.

## CONCLUSION

**IT IS HEREBY ORDERED** that Coutinho & Ferrostaal, Inc.'s and Gothaer Allgemeine Versicherung AG's Motion to Dismiss (Doc. #6) is **GRANTED**, and this complaint is **DISMISSED WITHOUT PREJUDICE**

New Orleans, Louisiana, this   20th   day of May, 2011.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

8